UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IN RE R & S ST. ROSE LENDERS, LLC<br><br>Debtor.<br><br>BRANCH BANKING AND TRUST,<br><br>Appellant,<br><br>v.<br><br>R & S ST. ROSE LENDERS, LLC, *et al.*,<br><br>Appellants. | Case No. 2:16-cv-00707-APG<br><br>**OPINION AFFIRMING THE BANKRUPTCY COURT'S ORDER DENYING SUBSTANTIVE CONSOLIDATION** |

Appellants Branch Banking and Trust (BB&T) and Commonwealth Land Title Insurance Company (Commonwealth) appeal the bankruptcy court's order denying their request to substantively consolidate the bankruptcy estates of debtors R & S St. Rose Lenders, LLC (Lenders) and R & S St. Rose, LLC (St. Rose). Substantive consolidation is an equitable tool that allows a bankruptcy court to combine the assets and liabilities of separate but related legal entities into a single pool from which all claims against the consolidated debtors are satisfied and inter-company claims are extinguished. The upshot in this case is that if Lenders' and St. Rose's estates are substantively consolidated, an inter-company secured debt of $12 million would be extinguished, putting BB&T in first priority position to recover the proceeds from a sale of property in St. Rose's estate. If substantive consolidation is denied, Lenders' estate, against which BB&T has no claim, would receive the sale proceeds.

The Ninth Circuit adopted a two-factor test in *In re Bonham* to guide the determination of whether substantive consolidation is appropriate. Under the *Bonham* factors, the bankruptcy court considers: "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." 229 F.3d 750, 766 (9th Cir. 2000). The

bankruptcy court previously denied substantive consolidation under both factors. On a prior appeal, the district court affirmed denial of consolidation under the second factor but remanded for reconsideration under the first factor. After holding an evidentiary hearing, the bankruptcy court again denied substantive consolidation. BB&T and Commonwealth appeal that second denial. I affirm the bankruptcy court's order denying substantive consolidation.

## I. BACKGROUND

The facts are largely undisputed. Debtors Lenders and St. Rose are owned and operated (through intermediary companies) by Saiid Forouzan Rad and R. Phillip Nourafchan. Rad and Nourafchan formed St. Rose for the sole purpose of acquiring a piece of property in Henderson, Nevada, which they planned to sell within a year to Centex Homes. They formed Lenders for the sole purpose of creating an entity through which private individuals could loan money to St. Rose to help purchase the property.

In 2005, St. Rose purchased the property through a $29 million loan from Colonial Bank, N.A. (the "Acquisition Loan"). This loan was secured by a first deed of trust encumbering the property. Rad and Nourafchan personally guaranteed the Acquisition Loan.

To complete the purchase, St. Rose also received a $12 million loan, purportedly from Lenders. This loan was evidenced by a promissory note and secured by a second position deed of trust on the property (the "Lenders DOT"). Although the loan nominally was from Lenders, at that time Lenders had no assets, no separate books and records, and no bank account. Instead, Rad and Nourafchan obtained the funds through loans from their friends and family. The individual lenders' checks to fund the $12 million loan were not made out to Lenders. Instead, the checks were made out to St. Rose or another entity of Rad and Nourafchan's, R & S Investment Group, LLC. St. Rose deposited the funds into its bank accounts or directly into escrow. Lenders issued promissory notes to the individual lenders. Despite Lenders' obligation to pay interest under the promissory notes, from 2005 to 2008 St. Rose made the interest payments to the individual lenders. St. Rose (and not Lenders) also issued tax forms to the individual lenders showing the interest payments. The promissory note between Lenders and St.

Rose required St. Rose to make annual interest payments to Lenders, but St. Rose never made those payments. The Lenders DOT secured the $12 million promissory note, but the individual lenders actually advanced over $19 million to St. Rose.

Centex chose not to buy the property. St. Rose and Colonial Bank executed a modification of the Acquisition Loan to extend the maturity date. As a condition of that modification, Colonial Bank required Lenders to subordinate the Lenders DOT. Lenders did so, and both the modification and the subordination agreements were recorded.

St. Rose and Colonial Bank subsequently took a second loan from Colonial Bank for approximately $43 million (the "Construction Loan"). This loan was intended to pay off the Acquisition Loan and to construct improvements on the property. The loan was secured by a deed of trust on the property and by Rad and Nourafchan's personal guarantees. Colonial Bank expected that it would obtain a first position deed of trust on the property to secure repayment of the Construction Loan. Colonial Bank's escrow instructions to Nevada Title Company required a first position deed of trust and conditioned disbursements under the loan on Colonial Bank having a first position deed of trust. To obtain that first position, Lenders would have had to agree to subordinate the Lenders DOT to the Construction Loan deed of trust. Commonwealth issued title insurance to Colonial Bank for the Construction Loan.

In 2008, the project was failing and Colonial Bank commenced foreclosure on the property under the Construction Loan deed of trust. During this process, it was discovered that the Lenders DOT was in first priority position because it had never been subordinated or reconveyed even though that was a requirement of the Construction Loan's escrow and funding. On July 9, 2008, Nevada Title sent an email to Rad requesting reconveyance of the Lenders DOT. Rad did not execute the subordination agreement and instead asked Nevada Title what position the Lenders DOT was on the property. Nevada Title responded on September 5, 2008, informing Rad that the Lenders DOT was in priority position over the Construction Loan.

The next business day, Lenders created a separate balance sheet and shortly thereafter obtained a bank account for the first time. Additionally, St. Rose and Lenders' financial records

were updated to reclassify the debt owed to the individual lenders that previously was booked to St. Rose to instead be reported as Lenders' obligation. Tax liabilities also were shifted from St. Rose to Lenders.

In 2009, Colonial Bank went into receivership and BB&T became its successor in interest. In 2011, Lenders and St. Rose filed separate petitions for bankruptcy. BB&T and Commonwealth moved for substantive consolidation of the two debtors' cases. The bankruptcy court denied the motion. As to the first *Bonham* factor, the bankruptcy court found that the debtors "are clearly related entities, and as they acknowledge, it is apparent that they were sloppy with certain corporate formalities during the period in which the underlying business transactions transpired." ECF No. 34 at 86. The bankruptcy court nevertheless concluded that Colonial Bank did not treat the debtors as a single economic unit when it entered into the Construction Loan. In reaching that conclusion, the bankruptcy court adopted findings made by a Nevada state court in separate litigation. *Id.* at 86-87. The bankruptcy court also found that BB&T did not meet its burden of showing that the individual lenders dealt with St. Rose and Lenders as a single economic unit. According to the bankruptcy court, BB&T's evidence was based on assumptions about what the individual lenders thought when they sent their payments to St. Rose instead of to Lenders and when they accepted the interest payments from St. Rose instead of from Lenders. *Id.* at 87. The court therefore held BB&T had not shown Colonial Bank or the individual lenders treated the debtors as a single economic unit. *Id.*

As to the second *Bonham* factor, the bankruptcy court held that BB&T had not shown that the two debtors' affairs were so entangled that consolidation would benefit the creditors because the entities divided their assets in 2008, and thus separation of the two entities' assets had already occurred. *Id.* at 88. Finally, the bankruptcy court concluded that substantive consolidation would not be in the best interest of all creditors, as BB&T was attempting to use it as a means to undermine the state court's factual finding that the Lenders DOT was in a priority position over the Construction Loan deed of trust. *Id.* at 89. The bankruptcy court therefore denied substantive consolidation. *Id.*

BB&T and Commonwealth appealed that denial. In the meantime, the bankruptcy court approved the sale of the property for approximately $13 million. St. Rose's bankruptcy plan, which the bankruptcy court had confirmed, provided for payment of the sale proceeds to Lenders as the first priority position on the property.

Senior District Judge Lloyd George remanded the bankruptcy court's order denying substantive consolidation with instructions to decide whether consolidation was warranted under the first *Bonham* factor. Judge George affirmed the bankruptcy court's ruling that the second *Bonham* factor did not support substantive consolidation. However, Judge George found the bankruptcy court made two errors related to the first *Bonham* factor. First, he concluded the bankruptcy court erred by relying on a finding of fact by the state court; he remanded for reconsideration of the first *Bonham* factor "without reliance on or reference to the state court order." ECF No. 34 at 137-38. Second, Judge George found the bankruptcy court erred by discounting BB&T's evidence about how the individual lenders treated the debtors. He took issue with the bankruptcy deeming BB&T's arguments merely "assumptions . . . based on conjecture," rather than reasonable inferences from the evidence. *Id.* 138-39. Judge George thus remanded for the bankruptcy court to resolve whether BB&T and Commonwealth "met their burden under the first *Bonham* factor as it concerns all creditors, not merely Colonial Bank." *Id.* at 140.

Finally, Judge George addressed the purpose substantive consolidation would serve. *Id.* He stated that "the sole aim of substantive consolidation is fairness to all creditors; the equitable treatment of all creditors." *Id.* That does not mean the "best interest of all of the creditors, but an equitable treatment of and fairness to all creditors." *Id.* He noted that the best interest of some creditors may be to receive treatment that is unfair to other creditors, but substantive consolidation is concerned with the equitable treatment of all creditors. "Such inequitable treatment can arise through the continued recognition of a claim created between entities when both entities disregarded corporate formalities and commingled assets." *Id.* at 141. Judge George

1   did not make this equitable determination himself, instead remanding to the bankruptcy court to
2   do so. *Id.*

3   On remand, the bankruptcy court held a multi-day evidentiary hearing and again denied
4   the motion for substantive consolidation.  The evidence established that the largest single creditor
5   by dollar amount was Colonial Bank.  The bankruptcy court found that Colonial Bank did not
6   treat Lenders and St. Rose as a single economic unit in relation to the Construction Loan because
7   Colonial Bank was aware of the Lenders DOT and it expressly required Lenders to subordinate its
8   DOT in connection with the prior modification of the Acquisition Loan.  Colonial Bank also
9   required the subordination of the Lenders DOT for the Construction Loan.  The bankruptcy court
10  thus made the factual finding that Colonial Bank dealt with Lenders and St. Rose as separate
11  economic units. ECF No. 1 at 72.  However, it found that every other creditor, consisting of the
12  individual lenders who loaned money to Lenders, treated Lenders and St. Rose as a single
13  economic unit. *Id.* at 75.  The bankruptcy court also found that Colonial Bank did not rely on
14  Lenders' separate assets in making the Construction Loan to St. Rose, while the individual
15  lenders were "indifferent" to Lenders' separate existence when they loaned funds to the project
16  and did not rely on the assets of either entity when making their loans. *Id.* at 76-77.

17  Evaluating these findings in context of the first *Bonham* factor, the bankruptcy court ruled
18  that Colonial Bank treated St. Rose and Lenders as separate economic units and did not rely on
19  Lenders' assets in making the Construction Loan to St. Rose, so the first *Bonham* factor was not
20  met with respect to Colonial Bank.  However, the bankruptcy court found the first *Bonham* factor
21  might be satisfied by the individual lenders because they treated St. Rose and Lenders as a single
22  economic unit and they relied on the sale of the property for repayment of their loans, not on the
23  assets of either entity.

24  Faced with these two types of creditors, the bankruptcy court concluded that Colonial
25  Bank's treatment of the debtors was the "most significant" because its claim "far exceeds the
26  claims of the individual lenders." *Id.* at 77.  Colonial Bank's loan file demonstrated that Colonial
27  Bank would look to the sale of the property and the guarantees by Rad and Nourafchan for loan
28

repayment. *Id.* According to the bankruptcy court, this evidence "permits only one inference critical to the substantive consolidation analysis: Colonial Bank never expected to have the assets of Lenders available to satisfy the Construction Loan." *Id.* The bankruptcy court thus concluded the first *Bonham* factor was not met. *Id.* at 78.

The bankruptcy court also considered whether substantive consolidation would ensure the equitable treatment of all creditors even if the individual lenders' treatment of St. Rose and Lenders as a single economic unit controlled. *Id.* at 78. The bankruptcy court concluded that Colonial Bank's expectation was to be protected by its title insurance if it did not receive a first deed of trust. *Id.* at 79. According to the bankruptcy court, the individual lenders expected to have their loans repaid from the sale of the property, some expected that their interests were secured by a deed of trust on the property, and they expected to be paid on their claims in the Lenders' bankruptcy proceeding. *Id.* at 80. The bankruptcy court noted these expectations likely would not be met if the court substantively consolidated the bankruptcy estates because the net result would be that the inter-company loan and related DOT would be extinguished, thus putting BB&T in first position through the Construction Loan. *Id.*

The bankruptcy court also addressed the statement in Judge George's remand order that inequitable treatment may arise through continued recognition of a claim between entities when both entities disregarded corporate formalities. *Id.* The bankruptcy court noted that Lenders had been formed in 2005 and the Lenders note encompassed the funds the individual lenders provided for St. Rose to acquire the property. *Id.* According to the bankruptcy court, "[t]here simply is no evidence supporting the conclusion that the evils occasioned by disregarding corporate formalities and commingling assets exist with respect to the [Lenders] Note." *Id.* at 80-81.

The bankruptcy court thus concluded that substantive consolidation "would be contrary to the expectations of Colonial Bank and the individual lenders," and "substantive harm would be visited upon the Lenders estate because the proceeds of the Property sale likely would go entirely to BB&T on its secured claim and would be unavailable to satisfy any of the claims of the individual lenders." *Id.* at 82. According to the bankruptcy court, although substantive

consolidation might be in BB&T and Commonwealth's best interests, it "would come at the expense of the individual lenders" and "[t]hat result would not be equitable to all creditors." *Id.* The bankruptcy court thus concluded that even if the first *Bonham* factor was satisfied, substantive consolidation was not warranted. *Id.*

In this present proceeding before me, BB&T and Commonwealth again appeal the bankruptcy court's denial of substantive consolidation. First, they contend that the bankruptcy court erred as a matter of law by focusing on how the largest creditor by dollar amount treated the debtors instead of how the largest number of creditors treated them. Second, they argue that the bankruptcy court's factual finding that Colonial Bank treated Lenders and St. Rose as separate economic units was clearly erroneous because Colonial Bank did not rely on St. Rose's or Lenders' credit in making the decision to fund the Construction Loan. Rather, they argue, Colonial Bank relied on both the value of the property against which it would have a deed of trust and the creditworthiness of guarantors Rad and Nourafchan. Third, they assert that the bankruptcy court erred by concluding substantive consolidation would frustrate the expectations of the individual lenders because those lenders expected they would recover only after the Colonial Bank loan was repaid, and thus the individual lenders took the risk that the sale of the property would not generate proceeds sufficient to repay their loans. Fourth, Appellants contend that denying substantive consolidation rewards Rad and Nourafchan's inequitable plan to manufacture corporate formalities only after they learned that the Lenders DOT was not subordinated to Colonial Bank's Construction Loan deed of trust as it should have been. Finally, Commonwealth argues that the bankruptcy court erred by considering whether BB&T and Commonwealth have other sources of recovery, such as title insurance or guarantees.

Appellee St. Rose[1] responds that the bankruptcy court used the correct legal standard when it concluded that the first *Bonham* factor was not met where the largest creditor by dollar amount did not treat the debtors as a single economic unit. Second, St. Rose contends the

---

[1] Appellees St. Rose Lenders, LLC; the Creditor Group; and R & S Investment Group filed joinders in St. Rose's brief. ECF Nos. 82-84.

bankruptcy court's correctly held that the debtors did not deal with the two debtors as a single economic unit given that Colonial Bank (1) entered into the two loans with only St. Rose and not Lenders, (2) did not consider Lenders' assets when deciding whether to make the loans, and (3) expressly required Lenders to subordinate the Lenders DOT in connection with the Construction Loan. St. Rose argues substantive consolidation would be inequitable because Colonial Bank obtained title insurance in the event it did not have a first position deed of trust, Colonial Bank did not expect to have Lenders' assets to satisfy the Construction Loan, the individual lenders expected to be repaid when the property was sold, and there was no evidence that the individual lenders expected to be in second position behind the Construction Loan (as opposed to the Acquisition Loan). Finally, St. Rose contends the bankruptcy court did not rely on alternative sources of recovery when making its determination.

**II. JURISDICTION**

I first must consider the "threshold jurisdictional issue" of whether the bankruptcy court's order denying substantive consolidation is a final and appealable order under 28 U.S.C. § 158. *In re Bonham*, 229 F.3d at 760-61. I apply a "pragmatic approach" under which a bankruptcy court order "is considered to be final and thus appealable where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *Id.* at 761 (quotation omitted).

Under *Bonham*, "substantive consolidation orders are final and appealable under § 158(a)." *Id.* at 762. In *Bonham*, the bankruptcy court's order granted substantive consolidation. *Id.* at 760. But here the bankruptcy court denied consolidation. The Sixth Circuit has held that the denial of substantive consolidation is not a final and appealable order. *See In re Cyberco Holdings, Inc.*, 734 F.3d 432, 440 (6th Cir. 2013). Even if *Bonham*'s jurisdictional holding does not uniformly apply to orders denying substantive consolidation, here the denial of substantive consolidation resolves and seriously affects substantive rights. There is no dispute that the only asset for either debtor's estate is the proceeds from the sale of the property. The decision whether to consolidate has dispositive impact on who may claim those proceeds. Consequently, in the

1  context of this case, I have jurisdiction to review the order denying substantive consolidation
2  because that decision seriously affects the parties' substantive rights and finally determines the
3  discrete issue of whether the bankruptcy estates should be substantively consolidated. In any
4  event, I would grant leave to appeal the bankruptcy court's order to the extent it is interlocutory.
5  28 U.S.C. § 158(a)(3) (granting district courts jurisdiction to hear appeals from interlocutory
6  bankruptcy orders with leave of the court).

### III. STANDARD OF REVIEW

I review de novo the bankruptcy court's conclusions of law. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005). I review the bankruptcy court's factual findings for clear error. *Id.* The bankruptcy court's factual findings are clearly erroneous only if they "leave the definite and firm conviction" that the bankruptcy court made a mistake. *Id.* (quotation omitted). Under clear error review, if the bankruptcy court's findings are "plausible in light of the record viewed in its entirety," I may not reverse them even if I would have "weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). In other words, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous," particularly where the decision rests on a credibility determination. *Id.* at 574-75. But if documents or objective evidence so contradict a witness's testimony, or testimony is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it," then I may find clear error even if the bankruptcy court's findings are based on a credibility determination. *Id.* at 575. I may affirm the bankruptcy court's decision "on any ground fairly supported by the record." *In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009).

### IV. ANALYSIS

Bankruptcy courts have the power to substantively consolidate bankruptcy estates. *In re Bonham*, 229 F.3d at 763. This power arises from the bankruptcy court's "general equity powers as expressed in § 105 of the Bankruptcy Code." *Id.* at 763-64. The bankruptcy court has "complete" power to "subordinate claims or adjudicate equities arising out of the relationship

between the several creditors . . . ." *Id.* at 764 (quoting *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941)).

Substantive consolidation "combine[s] the assets and liabilities of separate and distinct—but related—legal entities into a single pool and treat[s] them as though they belong to a single entity." *Id.* It is akin to piercing the corporate veil. *Id.* The net effect is that the assets are consolidated and "create a single fund from which all claims against the consolidated debtors are satisfied; duplicate and inter-company claims are extinguished; and, the creditors of the consolidated entities are combined for purposes of voting on reorganization plans." *Id.*; *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) ("The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor.") (quotation omitted). Because it "restructures (and thus revalues) rights of creditors," consolidation may result in some creditors recovering significantly more or less than they would absent consolidation. *In re Owens Corning*, 419 F.3d at 205.

There is "[n]o uniform guideline for determining when to order substantive consolidation." *In re Bonham*, 229 F.3d at 765. Instead, the decision must rest on "a searching review of the record, on a case-by-case basis" with an eye toward the doctrine's primary purpose of ensuring "the equitable treatment of all creditors." *Id.* (quotation omitted). But fairness does not necessarily mean equal distribution. For example, a creditor who "bargained prepetition for unequal treatment" by, for example, "obtaining guarantees of separate entities," may not be treated equitably by substantive consolidation. *In re Owens Corning*, 419 F.3d at 216. (citing *Chem. Bank N.Y. v. Kheel*, 369 F.2d 845, 848 (2d Cir. 1966) (Friendly, C.J., concurring) ("Equality among creditors who have lawfully bargained for different treatment is not equity but its opposite . . . .")).

Although it is a case-by-case inquiry, the Ninth Circuit adopted a two-factor test in *In re Bonham* to guide the determination of whether substantive consolidation is appropriate. Under the *Bonham* factors, the bankruptcy court considers: "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2)

whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." *Id.* at 766 (quotation omitted) (adopting the test set forth by the Second Circuit in *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 519 (2d Cir. 1988)). "The first factor . . . is based on the consideration that lenders structure their loans according to their expectations regarding th[e] borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets." *Id.* (quotation omitted). The second factor supports consolidation "only where the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors or where no accurate identification and allocation of assets is possible." *Id.* (quotation omitted). Either factor is sufficient to support substantive consolidation. *Id.*

Two broad themes animate this inquiry: (1) "whether there is a disregard of corporate formalities and commingling of assets by various entities," and (2) how the benefits from substantive consolidation balance against the harms it would cause. *Id.* at 765. The bankruptcy court should resort to substantive consolidation "sparingly." *Id.* at 767 (quotation omitted).

### A. The Bankruptcy Court Did Not Err in Applying the First *Bonham* Factor

*1. The Bankruptcy Court Did Not Apply the Wrong Legal Standard.*

BB&T and Commonwealth argue that the bankruptcy court erred as a matter of law by applying the wrong legal standard. They argue the bankruptcy court misconstrued the remand order's instructions to mandate that the first factor could be met only if every single creditor dealt with the debtors as a single economic unit. They also contend the bankruptcy court should have decided the first factor based on how the largest number of creditors treated the debtors rather than on how the largest creditor by dollar amount treated them.

The bankruptcy court did not require, as a condition of the first *Bonham* factor being met, that every creditor dealt with the debtors as a single economic unit. Rather, it identified two classes of creditors, one that treated the debtors as separate economic units (Colonial Bank) and one that treated the debtors as a single unit (the individual lenders). The bankruptcy court then

determined that Colonial Bank's treatment was most significant because it was the largest creditor by dollar amount. The bankruptcy court therefore did not apply an incorrect legal standard of mandating every creditor treat the debtors as a single economic unit.

Moreover, I reject BB&T and Commonwealth's position that, as a matter of law, the first *Bonham* factor must always be determined by the largest number of creditors rather than the creditors owed the largest dollar amount. Although some cases refer to how the majority of creditors treated the subject entities, none stated this was a requirement as a matter of law. *See In re The Lodge at Big Sky, LLC*, 454 B.R. 138, 143 (Bankr. D. Mont. 2011) (finding the first factor supported consolidation where the evidence showed that "all creditors, with perhaps the exception of [one]" treated the entities as a single unit); *In re Waksberg*, No. BAP CC-14-1102-DTASP, 2014 WL 5285648, at *7 (B.A.P. 9th Cir. Oct. 15, 2014) (stating that the bankruptcy court found the "bulk" of creditors dealt with the entities as the same); *In re LLS Am., LLC*, No. BAP EW-11-1524-DHPA, 2012 WL 2042503, at *11 (B.A.P. 9th Cir. June 5, 2012) (analyzing the first factor based on a group of creditors who were "overwhelmingly the largest creditor body both in number and in dollar amount").

I disagree with BB&T and Commonwealth that the largest number of creditors controls the first factor. That argument is contrary to *Bonham*'s instruction that substantive consolidation is a case-by-case inquiry. It is contrary to equitable principles generally. A bankruptcy court should not be constrained in evaluating the equities in a particular case by requiring it to be governed by an inflexible rule that may not fit the facts of the case before it.

Finally, not all courts have judged the first factor merely by a creditor count. Indeed, the very case *Bonham* relied on to adopt its two-factor test (*In re Augie/Restivo Baking Co., Ltd.*) found substantive consolidation was inappropriate even though, numerically speaking, more creditors treated the subject entities as a single economic unit. 860 F.2d at 519. There, the creditor objecting to consolidation made a loan to one of the subject entities based solely on that entity's financial condition and without knowledge of the other entity. *Id.* at 519. Another creditor likewise dealt with the two entities as separate. *Id.* The Second Circuit concluded that

the fact that there were many other creditors[2] who believed that they were dealing with a single entity did not justify consolidation, particularly where substantive consolidation would have been inequitable to one of the creditors who did not treat the subject entities as a single unit. *Id.*

The Ninth Circuit bankruptcy appellate panel in *Waksberg* (one of the cases on which BB&T and Commonwealth rely) reached a similar conclusion. There, the "bulk" of creditors dealt with the entities as one. 2014 WL 5285648, at *7. The bankruptcy appellate panel concluded that this factual finding "arguably supported" substantive consolidation under the first part of the first factor. *Id.* at *11. But the panel remanded because it would be inequitable to consolidate where the objecting creditor, who did not treat the corporate and individual debtors as a single economic unit and did not have a right to file a claim in the individual debtor's bankruptcy case, would recover less following consolidation. *Id.*

In this case, the bankruptcy court applied the correct rule of law.

### 2. *The Bankruptcy Court's Factual Findings Are Not Clearly Erroneous.*

BB&T and Commonwealth argue that the bankruptcy court's factual finding—that Colonial Bank treated Lenders and St. Rose as separate economic units—was clearly erroneous because Colonial Bank did not rely on St. Rose's or Lenders' credit in making the decision to fund the Construction Loan. However, the record supports the bankruptcy court's finding. Colonial Bank was aware of Lenders prior to entering into the Construction Loan and it treated Lenders as a separate economic unit. It required Lenders to subordinate the Lenders DOT as a term of the modification of the Acquisition Loan. It also required Lenders to subordinate the Lenders DOT as a term of distribution of the Construction Loan funds. Colonial Bank did not look to Lenders' assets as a source of possible recovery in the event St. Rose did not repay the Construction Loan. Instead, it based its decision on St. Rose's asset (the property) and Rad and Nourafchan's guarantees. There is no evidence Colonial Bank considered or treated St. Rose and

---

[2] The bankruptcy court referred to it as "the world-at-large" treating the two entities as a single economic unit. *In re Augie/Restivo Baking Co., Ltd.*, 84 B.R. 315, 321 (Bankr. E.D.N.Y. 1988).

Lenders as a single economic unit. The bankruptcy court's factual finding therefore is more than plausible in light of the entire record.

### B. The Bankruptcy Court Did Not Err in Weighing the Equities

BB&T and Commonwealth argue the bankruptcy court erred by concluding substantive consolidation would frustrate the expectations of the individual lenders. According to the appellants, the individual lenders expected they would recover only after Colonial Bank was repaid, and thus the lenders took the risk that the sale of the property would not generate proceeds sufficient to repay their loans. BB&T and Commonwealth also contend that substantive consolidation would reward Rad and Nourafchan's inequitable plan to manufacture corporate formalities only after they learned that the Lenders DOT was not subordinated to the Construction Loan deed of trust as it should have been.

The primary purpose of substantive consolidation is ensuring the equitable treatment of all creditors. However, equity in the context of substantive consolidation does not mean saving creditors or third parties from their own mistakes that do not arise out of either the debtors' abuse of the corporate form or how creditors treated the debtors. BB&T would be in the same position it is in now even if Rad and Nourafchan had "dotted every i and crossed every t" with respect to corporate formalities. Colonial Bank expected to be paid first and the individual lenders expected to be paid after Colonial Bank. But those expectations were defeated because no one ensured that Lenders had subordinated or reconveyed the Lenders DOT. That is not due to a lack of corporate separateness or the individual lenders treating St. Rose and Lenders as a single economic unit, and it is not a problem substantive consolidation was designed to solve. Thus, the bankruptcy court did not err in holding that there was "no evidence supporting the conclusion that the evils occasioned by disregarding corporate formalities and commingling assets exist with respect to the [Lenders] Note." ECF No. 1 at 80-81.

### C. The Bankruptcy Court Did Not Err by Relying on Other Sources of Recovery

Finally, Commonwealth argues that the bankruptcy court erred by considering whether BB&T and Commonwealth have other sources of recovery, such as title insurance or guarantees.

However, the bankruptcy court disclaimed that it was considering other sources of recovery. ECF No. 1 at 81-82. Even if the bankruptcy court erred by considering Colonial Bank's expectation that it would be protected by title insurance or guarantees, I may affirm on any ground supported by the record. As discussed above, the bankruptcy court did not err in finding the first *Bonham* factor was not met. Additionally, the bankruptcy court did not err by finding the equities did not support substantive consolidation.

**V. CONCLUSION**

IT IS THEREFORE ORDERED that the bankruptcy court's order denying the motion for substantive consolidation **(ECF No. 1 at 5-84) is AFFIRMED**. The clerk of court is instructed to close this case.

DATED this 8th day of March, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE